UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANNAH M. PADUANO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | No. 2:24-cv-01706-SCR<br><br><br>MEMORANDUM OPINION AND ORDER |

　　Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401-34, and supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f. Plaintiff challenges the "Step Five" determination of whether Defendant identified a significant number of jobs in the national economy that she can perform. ECF No. 12 at 7. For the reasons that follow, the Court will GRANT Plaintiff's motion for summary judgment and DENY the Commissioner's cross-motion for summary judgment.

**I. PROCEDURAL BACKGROUND**

　　Plaintiff applied for DIB and SSI in July 2021 and January 2022, alleging disability

////

beginning in April 2021. Administrative Record ("AR") 264-271.[1] The applications were disapproved initially, and on reconsideration. On October 11, 2023, administrative law judge ("ALJ") William Spalo presided over a hearing on the disapprovals. AR 33-60 (transcript). Plaintiff participated in the hearing, and was represented by counsel. A vocational expert, David Dittmer, also testified.

On November 20, 2023, the ALJ issued an unfavorable decision, finding Plaintiff was not under a disability, as defined in the Act, from April 10, 2021 through the date of the decision. AR 12-26 (decision). On May 20, 2024, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the Commissioner's final decision. AR 1-3 (decision).

Plaintiff filed this action in the Eastern District of California on June 13, 2024. ECF No. 1. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 12 (Plaintiff's summary judgment motion), 18 (Commissioner's summary judgment motion), and 19 (Plaintiff's reply).

## II. FACTUAL BACKGROUND

Plaintiff was 30 years old at the time of the hearing in October 2023.[2] AR 38. Plaintiff has a high school education. AR 28. Plaintiff had prior work experience including as a medical records clerk, in medical supply, and in telephone sales. AR 57. Plaintiff testified that she was unable to work full-time due to migraine headaches, vertigo, lower back pain, anxiety, and depression. AR 42-45. She testified that she had the migraine headaches almost everyday. AR 43. She testified that her anxiety and depression had worsened due to other health problems and she would have panic attacks. AR 43-44. She described having problems with vertigo and dizziness due to the migraines. AR 46-49.

The vocational expert (VE) testified as to the categorization of Plaintiff's past work and

---

[1] The AR is electronically filed at ECF No. 11-13 & 11-14. Page references to the AR are to the number in the lower right corner of the page. For briefs, page references are to the CM/ECF generated header in the upper right corner.
[2] The Court will not set forth the factual background/medical evidence in detail as there is no challenge to the assessment of medical opinions or evaluation of Plaintiff's subjective symptom testimony. This appeal involves only the number of jobs that exist in the national economy that Plaintiff can perform (Step Five).

that a person with Plaintiff's limitations would not be able to return to that work. AR 56-57. The ALJ's hypothetical was for an individual with the RFC to perform work at the sedentary exertional level. AR 56. The VE then testified that there were three occupations Plaintiff could perform, only one of which (document preparer) is defined by the DOT as a sedentary exertional level job. AR 57. The VE identified the jobs of hand packer and officer helper, which are categorized respectively as medium and light exertional level jobs. AR 57. The VE testified that there would be sedentary positions within these occupations that Plaintiff could perform. AR 57.

### III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Substantial evidence "means—and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation and citation omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576 (9th Cir. 1988); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th

Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  SUBSTANTIVE LAW

A claimant is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. § 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b); 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

*Id*., §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to

4

step four.

*Id.,* §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make her capable of performing her past work? If so, the claimant is not disabled. If not, proceed to step five.

*Id.*, §§ 404.1520(a)(4)(iv), (e), (f); 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Id.*, §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); *Bowen*, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue,* 698 F.3d 1153, 1161 (9th Cir. 2012); *Bowen*, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. [Step 1] The claimant has not engaged in substantial gainful activity (AR 17).
>
> 2. [Step 2] The claimant has the following severe impairments: migraine headaches (status-post stent placement for idiopathic intracranial hypertension); visual disturbances; anxiety disorder; depressive disorder; obesity; post-traumatic stress disorder; and vertigo (AR 17).
>
> 3. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (AR 18).
>
> 4. [Preparation for Step 4] The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except occasional operation of foot controls, bilaterally; no balancing, stooping (other than bending at the waist to sit), kneeling, crouching, crawling and climbing ladders. ropes or scaffolds; occasional climbing ramps or stairs; occasional operation of a motor vehicle; avoid even moderate exposure to humidity and wetness, extreme cold and heat, vibration, respiratory irritants

(fumes, odors, dusts and gases) and poorly ventilated areas; avoid all exposure to dangerous moving machinery and unprotected heights; avoid exposure to loud noise environments; no overhead reaching, bilaterally; jobs which can performed while using a cane for ambulation greater than 15 feet and the contralateral upper extremity can be used to carry small objects; work with simple tasks; only occasional changes in the work setting. (AR 19).

5. [Step 4] The claimant is unable to perform her past relevant work as the demands of that work exceed the RFC (AR 24).

6. [Step 5] The claimant was born in 1993 and was 27 years old on the alleged onset date, which is defined as a "younger individual". 20 CFR § 404.1563 (AR 24).

7. [Step 5, continued] The claimant has a high school education (AR 24).

8. [Step 5, continued] Transferability of job skills is not at issue because use of the Medical-Vocational Rules would support a finding of "not disabled" whether or not the claimant has transferable job skills (AR 24).

9. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity there are jobs that exist in significant numbers in the national economy that the claimant can perform (AR 24).

10. The claimant has not been under a disability, as defined by the Act, from April 10, 2021, through the date of decision (AR 26).

## VI. ANALYSIS

Plaintiff raises only one issue before this Court: that at Step Five, Defendant did not identify a significant number of jobs in the national economy that Plaintiff can perform. ECF No. 12 at 6-7. Specifically, Plaintiff argues that as to the only sedentary occupation identified, document preparer, the VE testified there are 1,000 jobs nationally, which is not a significant number. *Id.* at 9. As to the two other occupations, Plaintiff contends the exertional level of those jobs exceeds Plaintiff's RFC. Defendant argues that the VE adequately explained how his testimony deviated from the Dictionary of Occupational Titles ("DOT"), and the ALJ properly relied on the VE's testimony, which constituted substantial evidence supporting the decision. ECF No. 18 at 3, 5-8.

### A. The VE's Testimony was Inconsistent with the DOT

The parties agree that the VE's testimony was not consistent with the DOT. The VE

testified that the occupation of hand packager (DOT 920.587-018) was categorized by the DOT as medium work and the occupation of office helper (DOT 239.567-010) was categorized as light. AR 57.  Plaintiff's RFC is sedentary work with additional limitations.  A claimant's RFC represents the most a person can still do.  *See* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations.").  Plaintiff contends that an ALJ may not rely on VE testimony that is not consistent with the DOT's exertional levels and that doing so was reversible error.  ECF No. 12 at 9.  Defendant admits that the VE's testimony deviated from the DOT, but argues the testimony was "nuanced" and "persuasive" and constituted substantial evidence.  ECF No. 19 at 3, 5.

The analysis here begins with the Commissioner's binding rule that governs ALJ reliance on VE testimony.  *See Pol'y Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions*, SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000) ("SSR 00-4p); *Bray v. Comm'r Soc. Sec'y Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009) ("SSRs, according to the governing regulations, 'are binding on all components of the Social Security Administration' and 'represent precedent final opinions and orders and statements of policy and interpretations' of the SSA.") (quoting 20 C.F.R. § 402.35(b)(1)).  As relevant here, SSR 00-4p provides:

> Occupational evidence provided by a VE or VS [Vocational Specialist] generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination.

2000 WL 1898704 at *2.  The Rule further provides that "[n]either the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict."  *Id.*

SSR 00-4p also provides that ALJs may not rely on evidence from a VE if that testimony "is based on underlying assumptions or definitions that are inconsistent with our regulatory policies or definitions."  *Id.* at *3.  The Rule then proceeds to give the following example:

> We classify jobs as sedentary, light, medium, heavy and very heavy (20 CFR 404.1567 and 416.967).  These terms have the same meaning as they have in the exertional classifications noted in the DOT.

> Although there may be a reason for classifying the exertional demands of an occupation (as generally performed) differently than the DOT (e.g., based on other reliable occupational information), the regulatory definitions of exertional levels are controlling. For example, if all available evidence (including VE testimony) establishes that the exertional demands of an occupation meet the regulatory definition of "medium" work (20 CFR 404.1567 and 416.967), the adjudicator may not rely on VE testimony that the occupation is "light" work.

*Id.* Plaintiff contends that this language prohibits what occurred here – the ALJ finding that Plaintiff with an RFC of sedentary work could perform occupations that are categorized by the DOT as light or medium. ECF No. 12 at 7-8. Defendant counters by relying on the language from SSR 00-4p that neither the DOT or the VE "trumps" the other when there is a conflict. ECF No. 18 at 6.

At Plaintiff's hearing, the ALJ asked the VE to identify "sedentary, unskilled jobs" that an individual with Plaintiff's RFC could perform and identified only one sedentary job, document preparer. AR 57. The VE also identified hand packager, which the DOT classifies as medium. *Id.* However, the VE stated it was: "Classified as medium because when the Department of Labor formulated the Dictionary of Occupational Titles, their policy at the time was to in general categorize the job at the highest exertional and SVP [Specific Vocational Preparation] commonly performed at." *Id.* He then stated there would be "about 20,000" sedentary jobs in hand packaging. *Id.* The VE then identified the position of officer helper, which was light, and stated he would reduce the number of jobs by "say 25 percent erosion" to calculate the number of sedentary jobs at "about 70,000." *Id.*

There was clearly a conflict between the VE's testimony and the DOT. The VE testified that someone with an RFC of sedentary, could perform jobs the DOT classifies as light and medium. Under SSR 00-4p, the ALJ was accordingly required to both obtain "a reasonable explanation for any conflicts" and to "explain in the determination or decision how any conflict that has been identified was resolved." 2000 WL 1898704. SSR 00-4p further provides that "[i]n making disability determinations, we rely primarily on the DOT". *Id.* at 2. Moreover, SSR 00-4p states that "SSA adjudicators may not rely on evidence provided by a VE . . . if that evidence is

8

based on underlying assumptions or definitions that are inconsistent with our regulatory policies or definitions." *Id.* at 3. "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict." *Id.* at *4.

Instead of acknowledging the obvious inconsistency between the VE's testimony and the DOT and addressing it, the ALJ found that the VE's testimony "is consistent" with the DOT: "The vocational expert testified that despite hand packager being listed as medium in the DOT and office helper being listed as light in the DOT, based on his experience and knowledge, these jobs can be performed in the reduced number of jobs" reflected in the decision. AR 25. Most troublingly, the ALJ failed to address a clear logical inconsistency in the VE's testimony. As the VE testified, "when the Department of Labor formulated the Dictionary of Occupational Titles, their policy at the time was to in general categorize the job at the highest exertional and SVP *commonly performed at*." AR 57. One would then think that the most common level of exertion for a job categorized as "light" by the DOT—such as office helper—must be light. But the VE also testified, without meaningful explanation, that a full 75% of officer helper jobs were at the sedentary level. *See* AR 57 ("I'll say 25 percent erosion."). It cannot be true that the most common exertional level for office helper is "light" but that 75% of officer helper jobs are "sedentary."[3] "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

Even leaving aside this specific logical problem, the ALJ did not articulate any assessment

---

[3] The Commissioner cannot convincingly explain this problem away, arguing that "the VE explained that the DOT categorizes occupations at the highest exertional level the occupation is commonly performed at, but **there existed a narrow slice of jobs** within the hand packager and office helper occupations that a person limited to sedentary work could perform." ECF No. 18 at 7 (emphasis added). However, the VE did not testify there was a "narrow slice"; instead, the VE testified that 75% of the office helper jobs could be performed at the "sedentary" exertional level, even though that position is categorized in the DOT as "light."

9

of the VE's explanation regarding the number of sedentary jobs within DOT categories that were respectively classified as medium and light. The VE also did not offer any explanation for how he determined the number of sedentary jobs within the occupations of hand packager and officer helper other than a vague reference to "education and experience." AR 57-58. And the VE's testimony that there are 70,000 sedentary officer helper jobs is also apparently at odds with VE testimony in other recent cases. *See, e.g., Nix v. Kijakazi*, 2023 WL 7490052 (9th Cir. 2023) (finding VE's testimony that there were 36,000 officer helper, DOT 239.567-010, jobs existing nationally was reliable); *Lashaw O. v. Comm'r of Soc. Sec.*, 2025 WL 1482282 (S.D. Cal. May 23, 2025) (6,800 officer helper jobs in national economy); *Vega v. Comm'r of Soc. Sec.*, 2025 WL 268952 (E.D. Cal. Jan. 22, 2025) (15,000 officer helper jobs nationally). The VE did not testify as to the total number of hand packager jobs available and what erosion percentage he applied to account for Plaintiff's sedentary RFC, but simply stated that "the numbers for sedentary are about 20,000." AR 57. That too is hard to square with VE testimony in other recent cases, unless the VE believed that nearly all hand packaging jobs are actually sedentary—even though the DOT classifies such jobs as "medium." *See, e.g., Shawn G. v. Berryhill*, 2019 WL 1922520 (D. Or. April 30, 2019) (VE testified that there are 22,400 hand packager jobs nationally); *Tony B. v. Comm's of Soc. Sec'y Admin.*, 2021 WL 2451931 (W.D. Wash. June 16, 2021) (VE testified that there are 20,900 hand packager/inspector jobs nationally).

The VE's explanation is not the "reasonable explanation" required by SSR 00-4p. Nor did the ALJ address how he resolved the apparent inconsistencies between the VE testimony and the DOT, let alone the logical problem with the VE's erosion percentage for office assistant and the DOT's exertional basis. Instead, the ALJ seemed to say there was no conflict at all. Plaintiff's RFC was for the sedentary exertional level, and the ALJ's conclusion that Plaintiff could perform jobs that are categorized at the medium and light exertional level was not supported by substantial evidence.

### B. The Occupation Identified Does Not Exist in Significant Numbers

The VE identified one position in the sedentary exertional level that Plaintiff could perform. The error concerning the hand packager and officer helper positions could be harmless

if a significant number of jobs remain. *See Yelovich v. Colvin*, 532 F.App'x 700, 702 (9th Cir. 2013) (VE incorrectly identified two of three occupations, but error was harmless as VE correctly identified one occupation with 42,000 jobs existing nationally). However, the only sedentary job identified was document preparer (DOT 249.587-014), which exists in such small numbers that some courts have found it to be "obsolete." *See Valdez v. Comm'r of Soc. Sec.*, 2023 WL 2636377 (E.D. Cal. March 24, 2023) (finding document preparer occupation obsolete and collecting cases). Additionally, even if not discarded entirely as obsolete, the VE testified there were only 1,000 jobs nationally, which is not a significant number. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (25,000 national jobs was a "close call" as to sufficiency). Thus, the error was not harmless, and remand is required.

### C. The Scope of Remand

Plaintiff argues the scope of the remand should be limited to Step Five, and that the findings at Steps One to Four are law of the case. ECF No. 12 at 10-11. However, Plaintiff acknowledges that an expanded scope would be appropriate if "the evidence on remand is substantially different." *Id.* at 11. The Commissioner argues the scope on remand should not be limited, but rather a *de novo* hearing is appropriate. ECF No. 18 at 8-9. The Commissioner argues that the "ALJ will be adjudicating a long period of time that SSA has never previously considered." *Id.* at 10. The Commissioner contends this time period is from the date of the prior decision, to the date of the next decision (approximately two years). *Id.* at 11.

"[T]he law of the case doctrine and the rule of mandate apply to social security administrative remands from federal court in the same way they would apply to any other case." *Stacy v. Colvin*, 825 F.3d 563, 566 (9th Cir. 2016). "The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Id.* at 567. The doctrine is primarily concerned with efficiency and "should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Id*.

To the extent new evidence is presented which would impact the determination at Steps One through Four, the ALJ could reconsider those determinations. Thus, the Court will remand

11

for further proceedings consistent with this decision.

## VII.  CONCLUSION

The Commissioner carries the burden of proof at Step Five to identify jobs existing in significant numbers in the national economy that Plaintiff can perform, and as explained above, that burden was not met.  Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 12) is GRANTED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 18) is DENIED;
3. This action is REMANDED to the Commissioner for further proceedings consistent with this Order; and
4. The Clerk shall enter Judgment in favor of Plaintiff and close this case.

DATED: July 2, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE